[Cite as *Washington v. Ohio Adult Parole Auth.*, 2020-Ohio-3385.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jimmie L. Washington, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 19AP-830 (Ct. of Cl. No. 2018-01308JD) |
| Ohio Adult Parole Authority, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 18, 2020

**On brief:** *Jimmie L. Washington*, pro se.

**On brief:** *Dave Yost*, Attorney General, *Lauren D. Emery*, and *Samantha Scherger*, for appellee.

APPEAL from the Court of Claims of Ohio

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Jimmie L. Washington, appeals a judgment of the Court of Claims of Ohio that granted summary judgment to defendant-appellee, the Ohio Adult Parole Authority ("OAPA"). For the following reasons, we affirm that judgment.

{¶ 2} On July 10, 2009, Washington was found guilty of multiple felonies, including aggravated robbery, theft, and a gun specification. The Summit County Court of Common Pleas sentenced him to seven years of incarceration in the aggregate. The August 24, 2009 sentencing entry notified Washington that subsequent to his seven-year term of imprisonment he was "subject to Five (5) years of mandatory post-release control. If [Washington] violates the conditions of post-release control, [Washington] will be

subject to an additional prison term of up to one half of the stated prison term as determined by the Parole Board pursuant to law." (Def.'s Ex. A-1.)

{¶ 3} Washington completed his seven-year aggregate sentence and came under the supervision of OAPA. While on post-release control, Washington committed a new felony offense. He entered a plea of guilty to attempted felonious assault, and on August 31, 2016, the Summit County Court of Common Pleas sentenced him to nine months in prison. (Def.'s Ex. A-2.) The sentencing entry notified Washington that he "shall be supervised on post-release control by the Adult Parole Authority for a mandatory period of Three (3) years after being released from prison. If [Washington] violates the terms and conditions of post-release control, the Adult Parole Authority may impose a residential sanction that may include a prison term of up to nine months, and the maximum cumulative prison term for all violations shall not exceed one-half of the stated prison term." (Def.'s Ex. A-2)

{¶ 4} Washington was released from incarceration and placed under the supervision of OAPA on post-release control on February 1, 2017. While on post-release control, he absconded to the State of Arizona[1] twice and again violated the conditions of his post-release control. When Washington absconded, OAPA determined that, considering his history of violence and weapons and what was in the best interest of the general public, a warrant with a nationwide pick-up radius would be issued.

{¶ 5} In total, OAPA had Washington confined twice for violating the terms or conditions of post-release control: he was held in custody for 110 days beginning June 23, 2018, and he was held in custody for 111 days beginning May 8, 2019. Each time Washington was returned to the custody of OAPA, a hearing was held to determine what sanction was warranted by his violations of the terms of his post-release control. Prior to imposing a sanction on Washington, OAPA calculated his available prison sanction days to ensure that any sanction imposed was permissible pursuant to R.C. 2967.

{¶ 6} On September 25, 2018, Washington filed an action in the Court of Claims against OAPA generally alleging claims for false imprisonment. *See* Sept. 25, 2018 Compl. On October 15, 2018, Washington filed an amended complaint which generally alleged

---

[1] The Court notes that the address provided by Washington in connection with his appeal indicates that he is residing in the State of Arizona. Further, OAPA points out that Washington is currently listed as a violator-at-large by the Ohio Department of Rehabilitation and Correction. (Brief of OAPA at 10.)

claims for false imprisonment and negligence. *See* Oct. 15, 2018 Am. Compl. OAPA timely filed an answer to the amended complaint on October 30, 2018.

{¶ 7} Subsequently, on June 25, 2019 and with leave of the trial court, Washington filed his second amended complaint. (June 25, 2019 Second Am. Compl.) In his second amended complaint, Washington asserts that he was falsely imprisoned because OAPA negligently (1) issued a nationwide warrant in violation of the internal policy of OAPA; (2) sanctioned him to prison for violating the conditions of his post-release control when he did not have any available sanction time; and (3) issued a hold order against him when he did not have any available sanction time. As part of his second and third claims for false imprisonment, Washington also asserts, albeit inartfully, that with respect to the August 31, 2016 sentencing entry, the entry did not include all the notification information required so as to afford OAPA the authority to continue post-release control upon Washington's release from incarceration after serving his nine-month sentence. *See* Second Am. Compl. at ¶ 8-9, 15. As a result, Washington maintains that OAPA falsely imprisoned him when it confined him for violating the terms or conditions of post-release control.

{¶ 8} On July 10, 2019, without leave of the trial court, Washington filed a "Supplemental Complaint" which was stricken by the trial court on July 17, 2019. In the July 17, 2019 order, the trial court also directed OAPA to "forthwith file its answer to plaintiff's June 25, 2019 amended complaint." (July 17, 2019 Order.) OAPA filed its answer to Washington's second amended complaint that same day. (July 17, 2019 Answer.)

{¶ 9} On July 22, 2019, Washington filed a motion for default judgment which was opposed by OAPA and subsequently denied by a magistrate of the trial court. (Aug. 13, 2019 Order.) In denying the motion for default judgment, the magistrate found that OAPA had "filed an answer to each complaint filed by plaintiff" and further that pursuant to Civ.R. 55(D), "[n]o judgment by default shall be entered against this state * * * unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." (Aug. 13, 2019 Order.)

{¶ 10} On August 26, 2019, OAPA moved for summary judgment on Washington's claims.[2] OAPA attached to its motion the affidavits of Brigid Slaton, the Chief Hearing

---

[2] The motion was held in abeyance while Washington pursued a premature appeal to this court, filed on August 29, 2019, regarding the denial of his motion for default judgment. We dismissed Washington's first appeal for lack of a final appealable order. (Oct. 7, 2019 Journal Entry of Dismissal.)

Officer of the Ohio Parole Board, and Christopher Gerren, the Fugitive Coordinator with the OAPA's Field Services, each of whom testified to the facts as set forth above. OAPA also attached to its motion copies of the relevant common pleas court judgments and sentencing entries. On September 10, 2019, Washington opposed OAPA's motion for summary judgment. On November 13, 2019, the trial court entered summary judgment in favor of OAPA.

{¶ 11} On December 5, 2019, Washington timely appealed the November 13, 2019 judgment, assigning the following two errors:

> [1.] The trial court abused it's [sic] discretion when it denied Appellant's request for Default Judgement [sic].
>
> [2.] The trial court erred by granting summary of [sic] Judgement [sic] to the Appellees.

{¶ 12} In his first assignment of error, Washington contends that the trial court abused its discretion when it denied his request for default judgment. We do not agree.

{¶ 13} We review the trial court's decision denying Washington's request for default judgment for abuse of discretion. (Citations omitted.) *Discover Bank v. Schiefer*, 10th Dist. No. 09AP-1178, 2010-Ohio-2980, ¶ 5. "An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} Civ.R. 55(A) provides, in pertinent part, that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor." Thus, to avoid judgment by default, "a party against whom a claim is sought must either 'plead' or 'otherwise defend.' " *Schiefer* at ¶ 7, citing *Reese v. Proppe*, 3 Ohio App.3d 103, 105 (1981). Nonetheless, "[w]hen a party answers out of rule but before a default is entered, if the answer is good in form and substance, a default should not be entered." *Fowler v. Coleman*, 10th Dist. No. 99AP-319 (Dec. 28, 1999).

{¶ 15} Civ.R. 55(D) further provides, in pertinent part, that "[n]o judgment by default shall be entered against this state * * * unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

{¶ 16} Here, as previously noted, in denying the motion for default judgment, the trial court found that OAPA had "filed an answer to each complaint filed by plaintiff" and that pursuant to Civ.R. 55(D), "[n]o judgment by default shall be entered against this state * * * unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." (Aug. 13, 2019 Order.) Although the trial court did not specifically state that Washington had not established his right to relief by evidence satisfactory to the court, this conclusion is sufficiently implied. Therefore, for this reason alone, the trial court did not abuse its discretion in denying the motion for default judgment.

{¶ 17} Moreover, as the trial court found, the record makes clear that OAPA filed an answer in response to each of Washington's amended complaints, including the second amended complaint. As asserted by OAPA, its answer was "in good form and substance" and was filed on July 17, 2019, prior to Washington's request for default judgment filed on July 22, 2019. Therefore, default judgment would have been inappropriate in any event. *See Fowler.* Accordingly, we find the trial court did not abuse its discretion in denying Washington's request for default judgment and we overrule his first assignment of error.

{¶ 18} In his second assignment of error, Washington argues that the trial court erred in granting OAPA summary judgment on his claims for false imprisonment. We disagree.

{¶ 19} An appellate court reviews summary judgment under a de novo standard. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, quoting *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.). Summary judgment is proper only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29.

{¶ 20} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 21} "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Indus., Inc. v. Applied Co.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

{¶ 22} Washington has asserted three claims for false imprisonment. "False imprisonment occurs when a person confines another intentionally 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.' " *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 109 (1991), quoting *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71 (1977). The state may be held liable for the false imprisonment of an inmate if it wrongfully retains custody of that inmate beyond a lawful term of incarceration. *Id.* at 109-10. To prevail on a claim against the state liable for false imprisonment, a former inmate must establish: (1) expiration of the lawful term of confinement, (2) intentional confinement after the expiration, and (3) knowledge that the privilege initially justifying the confinement no longer exists. *Id.* at paragraph one of the syllabus; *Corder v. Ohio Dept. of Rehab. & Corr.*, 94 Ohio App.3d 315, 318 (10th Dist.1994).

{¶ 23} Nevertheless, a former inmate cannot maintain an action for false imprisonment where he was imprisoned in accordance with a judgment or order of a court, unless it appears such judgment is void on its face. *Beachum v. Ohio Dept. of Rehab. &*

*Corr.*, 10th Dist. No. 11AP-635, 2012-Ohio-673, ¶ 6; *McKinney v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-960, 2010-Ohio-2323, ¶ 9. Thus, the state may not be held liable for false imprisonment if the state imprisoned a plaintiff pursuant to a facially valid judgment, even if a court later finds that judgment is void. *Beachum* at ¶ 6; *McKinney* at ¶ 9. Facial invalidity requires that a defect be apparent on the face of the judgment, without consideration of extrinsic evidence or the application of case law to identify or explain the problem with the judgment. *Beachum* at ¶ 7; *Fisk v. Ohio Dept. of Rehab & Corr.*, 10th Dist. No. 11AP-432, 2011-Ohio-5889, ¶ 14; *McKinney* at ¶ 12.

{¶ 24} Washington has alleged that he was falsely imprisoned because OAPA negligently (1) issued a nationwide warrant in violation of the internal policy of OAPA; (2) sanctioned him to prison for violating the conditions of his post-release control when he did not have any available sanction time; and (3) issued a hold order against him when he did not have any available sanction time. Washington has also alleged, as part of his second and third claims for false imprisonment, that the August 31, 2016 sentencing entry failed to include all information necessary to vest OAPA with the authority to continue post-release control upon Washington's release from incarceration. As explained below, we find no merit to any of Washington's claims.

{¶ 25} As a threshold matter, we reject the contention of OAPA that the issue of whether there was a defect in the sentencing entries because they did not contain all of the required notifications regarding post-release control as set forth in *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, has not been preserved for appeal. First, as noted previously, Washington has alleged that at least with respect to the August 31, 2016 entry, the entry did not contain all information mandated by *Grimes*. Moreover, we note that Washington's entire memorandum in opposition to the motion of OAPA for summary judgment consists of the argument that he was falsely imprisoned because he was confined pursuant to defective sentencing entries. Therefore, we find this issue has been preserved for appeal.

{¶ 26} Nevertheless, whether OAPA falsely imprisoned Washington turns on whether the August 24, 2009 and August 31, 2016 sentencing entries are facially invalid. Washington contends that the entries are facially invalid because they lack the information required by *Grimes*. Yet, as Washington must resort to case law to explain the problem

with the sentencing entries, he has not shown the entries are facially invalid. Therefore, as a matter of law, to the extent they exist at all, any alleged deficiencies in the sentencing entries cannot not form the basis for a false imprisonment claim.

{¶ 27} Turning to Washington's claim for false imprisonment premised on OAPA improperly issuing an arrest warrant with a nationwide pickup radius, we find this claim meritless. This is so because, even assuming arguendo that OAPA disregarded its own internal policies on this subject, a violation of such policies does not give rise to a cause of action for false imprisonment. *See Cotten v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-240, 2018-Ohio-3392, ¶ 10; *see also Gordon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-792, 2018-Ohio-2272, ¶ 16, citing *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997). Furthermore, the evidence shows that OAPA properly followed its internal policies in issuing the nationwide warrant. OAPA Fugitive Coordinator Christopher Gerren attested that in considering Washington's history of recidivism, previous violent offenses and his use of weapons, a warrant with a nationwide pickup radius was authorized. (Gerren Aff. at ¶ 5, 7.) Therefore, Washington's claim for false imprisonment premised on the nationwide warrant fails as a matter of law.

{¶ 28} Next, we reject Washington's claim that he was falsely imprisoned because the prison sanction imposed by OAPA exceeded his available prison sanction days. Pursuant to R.C. 2967.28(F)(3), when a former inmate who is released subject to post-release control commits another felony during the term of his supervision, the OAPA is permitted to impose additional prison term sanctions for subsequent post-release control violations. In this case, while Washington was on post-release control following his incarceration for his first felony of aggravated robbery, he committed a second felony of attempted felonious assault. (Slaton Aff. at ¶ 5-6.) After being released on post-release control following his nine-month incarceration for the second felony, he committed numerous violations of the conditions of his post-release supervision, including absconding to Arizona. (Slaton Aff. at ¶ 9.) The evidence shows that prior to imposing any sanctions, OAPA properly calculated the total amount of prison sanction time available pursuant to section 2967 of the Revised Code. (Slaton Aff. at ¶ 14.) This calculation shows that Washington had 1228 prison sanction days available. (Slaton Aff.) Because R.C. 2967 limits the maximum prison sanction to be imposed to nine months at any one time,

however, Washington could be sanctioned only up to nine months. OAPA imposed a 111-day sanction, well under the nine months possible. Accordingly, as a matter of law, Washington was not falsely imprisoned when OAPA imposed a 111-day prison sanction for violating the terms of his post-release control.

{¶ 29} Finally, Washington's claim that he was falsely imprisoned because he was detained pursuant to an invalid hold order lacks merit. As with his claim based on the nationwide arrest warrant, this claim is premised on the allegation that the hold order was issued in violation of OAPA's internal policies, and it lacks merit for the same reasons: first, because a violation of internal policies does not give rise to a false imprisonment claim in any event, *see Cotten* and *Gordon*; and second, because the evidence in this case shows that the hold order was properly issued after OAPA verified that Washington had available sanction time. (Gerren Aff. at ¶ 6-7.) Accordingly, as a matter of law, Washington was not falsely imprisoned when he was detained pursuant to a lawfully issued hold order.

{¶ 30} In short, none of Washington's claims for false imprisonment has merit, and the trial court properly found that OAPA lawfully confined Washington for violating the terms and conditions of the post-release control imposed during his two sentencings pursuant to facially valid sentencing entries. Accordingly, we overrule Washington's second assignment of error.

{¶ 31} For all the foregoing reasons, we overrule Washington's first and second assignments of error, and we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN, J., concurs.
BRUNNER, J., concurs in part and concurs in judgment.

BRUNNER, J., concurring.

{¶ 32} I concur with the decision of the majority and write separately for the purpose of clarifying the term, "abuse of discretion," as our reviewing standard. We have stated in paragraph 13 of our decision that, "[a]n abuse of discretion is *more than* an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." (Emphasis added.) *Discover Bank v. Schiefer*, 10th Dist. No. 09AP-1178, 2010-Ohio-2980, ¶ 5, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). I want to make it clear

that an error of law is, according to our case law, tantamount to an abuse of discretion and is not something lesser, in that:

> It is also error, even under an abuse of discretion standard, for a trial court to err legally because " 'no court has the authority, within its discretion, to commit an error of law.' " *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, quoting *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7; *see also, e.g., State v. Chandler*, 10th Dist. No. 13AP-452, 2013-Ohio-4671, ¶ 8 (Citations omitted.) ("Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, we note that no court has the authority, within its discretion, to commit an error of law.").

*State v. Zimmerman*, 10th Dist. No. 18AP-75, 2019-Ohio-721, ¶ 21.  Thus, an error of law is tantamount to an abuse of discretion and is just as reversible under an abuse of discretion standard as those unfortunate decisions involving poor judgment.

————————